## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| **DARRYL DURR,** | ) Case No. 2:10 cv 288 |
| | ) |
| Plaintiff, | ) JUDGE WATSON |
| | ) |
| v. | ) MAGISTRATE JUDGE ABEL |
| | ) |
| **TED STRICKLAND, Governor** | ) |
| **State of Ohio** | ) **Complaint for Declaratory Judgment** |
| **77 South High Street, 30th Floor** | ) |
| **Columbus, Ohio 43215;** | ) |
| | ) |
| and | ) |
| | ) |
| **ERNIE L. MOORE, Director** | ) |
| **Ohio Dept. of Rehabilitation** | ) |
| **& Correction** | ) |
| **770 West Broad St.** | ) |
| **Columbus, Ohio 43222;** | ) |
| | ) |
| and | ) |
| | ) |
| **PHILLIP KERNS, Warden** | ) |
| **Southern Ohio Correctional Facility** | ) |
| **1724 State Route 728** | ) |
| **Lucasville, Ohio 45699;** | ) |
| | ) |
| and | ) |
| | ) |
| **ROSEANNA CLAGG,** | ) |
| **Acting Healthcare Administrator,** | ) |
| **Southern Ohio Correctional Facility** | ) |
| **1724 State Route 728** | ) |
| **Lucasville, Ohio 45699;** | ) |
| | ) |
| and | ) |
| | ) |
| **JOHN DOES 1-40,** | ) |
| **Unknown individuals involved** | ) |
| **in Ohio's lethal injection executions;** | ) |
| | ) |

| | |
|---|---|
| **and** | ) |
| **Anonymous Execution Team** | ) |
| **Members ## 1-22** | ) |
| **(Names and Addresses unavailable to** | ) |
| **Plaintiff)** | ) |
| **c/o Southern Ohio Correctional Facility** | ) |
| **1724 State Route 728** | ) |
| **Lucasville, Ohio 45699,** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

For his causes of action, Plaintiff Darryl Durr, by and through counsel, states and alleges all as follows.

## Nature of the Action

1.     This action is brought pursuant to 28 U.S.C. § 1331 for violations and threatened violations of the Federal Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

2.     Plaintiff Durr is a prisoner of the State of Ohio under sentence of death.

3.     Plaintiff Durr seeks equitable relief in the form of a declaratory judgment that Defendants are violating or intend to violate these statutes.

4.     Defendants carry out executions in Ohio by injecting sodium thiopental intravenously.

5.     Alternatively, Defendants carry out executions in Ohio by injecting midazolam and hydromorphone intramuscularly.

6.     Defendants are state actors.

7.     Under the Supremacy Clause of the United States Constitution, Defendants are required to obey the Federal Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, including the associated federal regulations, and the Federal Food, Drug & Cosmetic Act, 21 U.S.C. §§ 301, *et seq.*, including the associated federal regulations.

8.     The Federal Controlled Substances Act lists schedules for controlled substances.

9.    The Federal Controlled Substances Act says how and by whom controlled substances can be distributed, obtained, dispensed, and/or administered.

10.    The Federal Controlled Substances Act requires stringent registration, qualification and licensure requirements before a Schedule II or Schedule III substance may be distributed.

11.    The Federal Controlled Substances Act requires a medical practitioner to write a prescription for substances classified under Schedule II or Schedule III before that substance may be dispensed or administered, unless a licensed medical doctor is administering the scheduled substance to the ultimate user of the substance.

12.    Sodium thiopental is a controlled substance.

13.    Sodium thiopental is a Schedule III drug.

14.    Hydromorphone is a controlled substance.

15.    Hydromorphone is a Schedule II drug.

16.    Defendants' means for obtaining, distributing, dispensing, and/or administering sodium thiopental for executions does not comply with the Federal Controlled Substances Act.

17.    Defendants' means for obtaining, distributing, dispensing, and/or administering hydromorphone for executions does not comply with the Federal Controlled Substances Act.

18.    The Federal Food, Drug & Cosmetic Act permits the distribution, dispensing, and/or administration of certain drugs including controlled substances only when a licensed medical practitioner issues a prescription.

19.    Under the Federal Food, Drug & Cosmetic Act, only a licensed medical practitioner can obtain and use drugs that require a prescription.

20.    No licensed medical practitioner prescribes sodium thiopental to Defendants for use in lethal injections.

21.    No licensed medical practitioner dispenses or administers sodium thiopental during Defendants' implementation of their lethal injection execution policy.

22.    No licensed medical practitioner or person authorized under the law distributes sodium thiopental during Defendants' implementation of their lethal injection execution policy.

23.    No licensed medical practitioner prescribes hydromorphone to Defendants for use in lethal injections.

24.    No licensed medical practitioner dispenses or administers hydromorphone during Defendants' implementation of their lethal injection execution policy.

25.    No licensed medical practitioner or person authorized under the law distributes hydromorphone during Defendants' implementation of their lethal injection execution policy.

26.    Defendants' actions violate the Federal Food, Drug & Cosmetic Act.

27.    The Federal Food, Drug & Cosmetic Act requires approval of drugs for the purposes in which they are intended to be used.

28.    Using sodium thiopental in lethal injections has not been approved by the U.S. Food and Drug Administration (FDA).

29.    Using hydromorphone in lethal injections has not been approved by the U.S. FDA.

30.    Because the use of the foregoing chemicals for lethal injections has not been approved by the FDA, Defendants' use of these chemicals in lethal injections violates the Federal Food, Drug & Cosmetic Act.

31.    Neither the Federal Controlled Substances Act nor the Federal Food, Drug & Cosmetic Act contains any exceptions for a lethal injection execution.

32.    Plaintiff Durr is not herein alleging that Defendants could never execute him by lethal injection.

33.     Plaintiff Durr does not in this Complaint contend that lethal injection is *per se* unconstitutional.

34.     Plaintiff Durr does not in this Complaint challenge, under 42 U.S.C. § 1983, the constitutionality of the method by which Defendants will execute him.

35.     Plaintiff Durr asserts that any execution by lethal injection must comport with the Federal Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

36.     Plaintiff Durr seeks a declaratory judgment that Defendants' means for obtaining, distributing, dispensing, and/or administering the lethal injection chemicals violate the Federal Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

**Parties**

**Plaintiff**

37.     Plaintiff Durr is a citizen of the United States and a resident of the State of Ohio.

38.     Plaintiff Durr is presently incarcerated on Ohio's Death Row, at the Ohio State Penitentiary, 878 Coitsville-Hubbard Road, Youngstown, Ohio, 44505, as Inmate Number A207889.

39.     Plaintiff Durr is in the custody of Defendants, and under the control and supervision of the State of Ohio Department of Rehabilitation and Correction, and is thus a person within the jurisdiction of the State of Ohio.

40.     Plaintiff Durr was sentenced to death in the Cuyahoga County Court of Common Pleas for one count of Aggravated Murder.

41.     The Cuyahoga County prosecutor filed, in the Supreme Court of Ohio, a motion to set an execution date against Plaintiff Durr.

42.     The Supreme Court of Ohio granted that motion, and set a November 10, 2009 execution date for Plaintiff Durr.

43.     Plaintiff Durr was given a reprieve by Governor Ted Strickland on October 5, 2009 due to the problems arising out of the execution of Romell Broom.

44.     The reprieve was granted until April 20, 2010, which is when the State of Ohio intends to execute Plaintiff Durr.

**Defendants**

45.     Defendant Ted Strickland is the Governor of the State of Ohio and has been since January 1, 2007.

46.     Defendant Strickland's office is at 77 South High Street, 30th Floor, Columbus, Ohio 43215, in the Eastern Division of the Southern Federal Judicial District of Ohio.

47.     Upon information and belief, Defendant Strickland is a resident of the Southern Federal Judicial District of Ohio.

48.     Defendant Strickland is the final executive authority in the state, statutorily and constitutionally, responsible for the execution of all sentences of death in Ohio and the manner in which those sentences are executed.  He is sued here in his individual and official capacity for the purpose of obtaining declaratory relief.

49.     Defendant Ernie L. Moore serves as Director of the Ohio Department of Rehabilitation and Correction ("DRC"), and has served in that capacity since February 1, 2010.

50.     Defendant Moore's office is at 770 West Broad Street, Columbus, Ohio 43222, in the Eastern Division of the Southern Federal Judicial District of Ohio.

51.     Upon information and belief, Defendant Moore is a resident of the Southern Federal Judicial District of Ohio.

52.    DRC is a department of the State of Ohio that was created and is maintained pursuant to Ohio Revised Code § 5120.  As such, Defendant Moore is charged with and authorized under Ohio Revised Code § 5120.01 to prescribe and direct the promulgation of rules and regulations for the DRC, including the rules and regulations for the conduct of prison operations and execution procedures.  (See Execution Policy, Appendix A)

53.    Defendant Moore is specifically authorized and directed by state statute to prescribe and direct the means by which the DRC carries out executions within the statutorily specified method of lethal injection.[1]

54.    Defendant Moore is sued in his individual and official capacities for the purpose of obtaining declaratory relief and such other relief as the Court finds Plaintiff Durr should receive.

55.    Defendant Phillip J. Kerns is Warden of Southern Ohio Correctional Facility ("SOCF"),[2] a correctional institution of the DRC that was created and is maintained pursuant to Ohio Revised Code § 5120.05, and which is the prison at which sentences of death are executed in the State of Ohio.

56.    Defendant Kerns's office is at the Southern Ohio Correctional Facility, 1724 State Route 728, Lucasville, Ohio 45699, in the Western Division of the Southern Federal Judicial District of Ohio.

57.    Upon information and belief, Defendant Kerns is a resident of the Southern Federal Judicial District of Ohio.

58.    Pursuant to Ohio Revised Code § 5120.38, Defendant Kerns, as the Warden of SOCF, is charged with management of SOCF and the oversight and conduct of operations there, including the oversight and conduct of executions carried out there.

---

[1] Ohio Rev. Code § 5120.01; § 2949.22.
[2] Donald Morgan will succeed Kerns as Warden at SOCF as of April 11, 2010.

59.     By virtue of his authority over the staff of SOCF and the authority vested in him by DRC's execution policy, DRC-01-COM-11, Defendant Kerns is responsible for the way in which executions are conducted in Ohio.

60.     Defendant Kerns is sued here in his individual and official capacities for the purpose of obtaining declaratory and such other relief as the Court finds Plaintiff Durr should receive.

61.     Defendant Roseanna Clagg is licensed as a registered nurse and is the Acting Healthcare Administrator at SOCF.

62.     Defendant Clagg's office is at the Southern Ohio Correctional Facility, 1724 State Route 728, Lucasville, Ohio 45699, in the Southern Federal Judicial District of Ohio.

63.     Upon information and belief, Defendant Clagg is a resident of the Southern Federal Judicial District of Ohio.

64.     By virtue of her position as Acting Healthcare Administrator at SOCF, Defendant Clagg participates in the planning of, purchasing, distribution and preparation for, and administration of executions in the State of Ohio.

65.     Defendant Clagg is sued here in her individual and official capacities for the purpose of obtaining declaratory and such other relief as the Court finds Plaintiff Durr should receive.

66.     Defendants John Does 1-40, are officials, officers, employees, agents, and servants of the State of Ohio who, by virtue of their employment or other status (including independent contractors and volunteers under the supervision of the Defendants and their designees), participate in the planning of, purchasing, distribution and preparation for, and administration of executions in the State of Ohio.

67.     Plaintiff Durr cannot provide the Court the natural names of these individuals because they are thus far unknown.  These persons will be added to this suit as named Defendants as discovery uncovers the natural names of these individuals.

68.     Upon information and belief, Defendants John Does 1-40 are residents of, and/or subject to the jurisdiction of, the Southern Federal Judicial District of Ohio.

69.     Defendants John Does 1-40 are sued here in their respective individual and official capacities for the purpose of obtaining declaratory and such other relief as the Court finds Plaintiff Durr should receive.

70.     Defendants Anonymous Execution Team Members #1-22 are individuals so identified by the defendants in *Cooey v. Strickland*, No. 2:04-cv-1156, S.D. Ohio.

71.     Plaintiff Durr cannot provide the Court the natural names of these individuals because they are to remain anonymous pursuant to a protective order entered in *Cooey v. Strickland*.

72.     Defendants Anonymous Execution Team Members #1-22 are individuals who participate in the planning of, purchasing, distribution and preparation for, and administration of executions in the State of Ohio, although they are individuals different and distinguished from Defendants John Does 1-40.

73.     Upon information and belief, Defendants Anonymous Execution Team Members #1-22 are residents of, and/or subject to the jurisdiction of, the Southern Federal Judicial District of Ohio.

74.     Defendants Anonymous Execution Team Members are sued in their respective individual and official capacities for the purpose of obtaining declaratory and such other relief as the Court finds Plaintiff Durr should receive.

75.     Each and all of the foregoing Defendants at all times relevant to this Complaint were acting or are intending to act in their official capacities with respect to all acts and omissions described in this Complaint, and were in each instance acting or are intending to act under color of state law.

76.     Each and all of the foregoing Defendants at all times relevant to this Complaint intend to act in their respective official capacities and under color of state law to execute Plaintiff Durr by lethal injection in the manner set forth in DRC Policy 01-COM-11.

**Jurisdiction**

77.     This Court has jurisdiction under 21 U.S.C. § 332 (enjoining violations of the Federal Food, Drug & Cosmetic Act); under 28 U.S.C. § 1331, in that it arises under the Constitution or laws of the United States; under 28 U.S.C. § 1651 (the All Writs Act); and under 28 U.S.C. § 2201(a), in that the purpose of this action is to secure declaratory relief.

78.     This Court has personal jurisdiction over Defendants as they are residents of the State of Ohio, and are presently located in the State of Ohio, and/or made themselves subject to the jurisdiction of this Court.

**Venue**

79.     Venue is proper in this federal judicial district under 28 U.S.C.§ 1391(b)(1)-(3) in that (1) Defendants Strickland, Moore, and Kerns all reside in its territorial jurisdiction; (2) Defendant Moore's and Defendant Kerns's decisions regarding the conduct of executions within the wide discretion created by Ohio Revised Code § 2949.22 are made in its territorial jurisdiction, and (3) all of the Defendants who Plaintiff Durr can identify reside in the same state.

**Exhaustion of Administrative Remedies**

80.     Plaintiff Durr is not challenging prison conditions or otherwise alleging a violation of his civil rights pursuant to 42 U.S.C. § 1983 in this action.

81.     Exhaustion of administrative remedies is therefore not required.

82.     Plaintiff Durr has nonetheless taken the steps that would have been sufficient to exhaust administrative remedies available to him if he had been required to do so to maintain this action.

83.     Plaintiff Durr filed a grievance with the Ohio DRC alleging with particularity that the DRC plans to use chemicals to execute him and other persons within the jurisdiction of the United States in violation of the Federal Controlled Substances Act and the Federal Food, Drug and Cosmetic Act, and thereby also in violation of the Supremacy Clause of the United States Constitution.  (See Attachment B, Grievance)

84.     Plaintiff Durr requested that the DRC comply with the foregoing federal statutes, including obtaining FDA approval for the use in executions of all chemicals to which either or both of these statutes apply, before proceeding with any more executions by lethal injection.

85.     DRC has not yet responded to Plaintiff Durr's grievance, although it is clear from previous grievances filed related to the State's lethal injection execution policy, practices, procedures, and/or protocols that DRC considers any such issues "non-grievable."

**Facts Generally Applicable To All Claims**

86.     Defendants are responsible for carrying out executions in the State of Ohio.

87.     Defendants intend to execute Plaintiff Durr by injecting him intravenously with sodium thiopental.

88.     Alternatively, Defendants intend to execute Plaintiff Durr by injecting him intramuscularly with midazolam and hydromorphone.

89.     Under Ohio's execution policy, DRC Policy 01-COM-11, no licensed medical doctor will order, purchase, prescribe, dispense, distribute, and/or administer the lethal injection chemicals.

90.     Either Defendant Moore or Defendant Kerns or Defendant Clagg, or Defendants Doe 1-40 or Defendants Anonymous Execution Team Members, acting on the orders of Defendant Moore or Defendant Kerns, will order, purchase, dispense, distribute, and/or administer the lethal injection chemicals.

91.     None of the Defendants is a licensed physician.

92.     Title 21 U.S.C. § 812, part of the Federal Controlled Substances Act, creates five schedules of controlled substances.

93.     Under the foregoing statute, drugs are schedule I controlled substances if (a) the drug or other substance has a high potential for abuse; (b) the drug or other substance has no currently accepted medical use in treatment in the United States; and (c) there is a lack of accepted safety for use of the drug or other substance under medical supervision.

94.     Under the foregoing statute, drugs are schedule II controlled substances if (a) the drug or substance has a high potential for abuse; (b) the drug or substance has a currently accepted medical use in the United States or a currently accepted medical use with severe restrictions; and (c) abuse of the drug or other substances may lead to severe psychological or physical dependence.

95.     Under the foregoing statute, drugs are schedule III controlled substances if (a) the drug or other substance has a potential for abuse less than the drugs or other substances in schedules I and II; (b) the drug or substance has a currently accepted medical use in the United States; and (c) abuse of the drug or other substance may lead to moderate or low physical dependence or high psychological dependence.

96.     Under the foregoing statute, drugs are schedule IV controlled substances if (a) the drug or substance has a low potential for abuse relative to the drugs or other substances in schedule III; (b) the drug or other substance has a currently accepted medical use in treatment in the United States; and (c) abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule III.

97.     Under the foregoing statute, drugs are schedule V controlled substances if (a) the drug or other substance has a low potential for abuse relative to the drugs or other substances in schedule IV; (b) the drug or other substance has a currently accepted medical use in treatment in the United States; and (c) abuse of the drug or other substance may lead to limited physical dependence or psychological dependence relative to the drugs or other substances in schedule IV.

98.     Hydromorphone is a Schedule II controlled substance.

99.     Sodium thiopental is a Schedule III controlled substance.

100.    Title 21, United States Code, § 802(10) defines the term "dispense" as "to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner, including the prescribing and administering of a controlled substance and the packaging, labeling, or compounding necessary to prepare the substance for such delivery.  The term 'dispenser' means a practitioner who so delivers a controlled substance to an ultimate user or research subject."

101.    Title 21, United States Code, Section 802(11) defines "distribute" as "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical.  The term 'distributor' means a person who so delivers a controlled substance or a listed chemical."

102.    Title 21, United States Code, Section 802(21) defines "practitioner" as a physician, dentist, veterinarian, scientific investigator, pharmacy, hospital, or other person licensed, registered, or otherwise permitted, by the United States or the jurisdiction in which he practices or does research, to distribute, dispense, conduct research with respect to, administer, or use in teaching or chemical analysis, a controlled substance in the course of professional practice or research.

103.    The federal regulations associated with the CSA and/or the FDCA do not provide any exceptions to the laws' requirements for purposes of a lethal injection execution. *See* 21 CFR §1300 *et seq*.

104.    Title 21, United States Code, § 829(a) prohibits, except in emergency situations not applicable here, dispensing any Schedule II drug without a *written* prescription from a practitioner, *i.e.* a person authorized by law to administer such a drug, unless such drug or drugs are dispensed directly to the ultimate user by a practitioner other than a pharmacist.

105.    Title 21, United States Code, § 829(b) prohibits dispensing any Schedule III drug without a written or oral prescription from a practitioner, *i.e.* a person authorized by law to administer such a drug, unless such drug or drugs are dispensed directly to the ultimate user by a practitioner other than a pharmacist.

106.    Title 21 United States Code, §§ 841 and 842 generally prohibit, *inter alia*, distribution of or dispensing a controlled substance, subject to exceptions in 21 U.S.C. §§ 825 and 829.

107.    Defendants are not within any of these exceptions.

108.    Title 21 U.S.C. § 829 means that a doctor medically licensed to administer and/or dispense sodium thiopental must administer and/or dispense the sodium thiopental to Plaintiff Durr.

109.    Title 21 U.S.C. § 829 also means that a doctor medically licensed to obtain, prescribe, distribute, and/or order the sodium thiopental must issue a prescription for the use of the sodium thiopental.

110.    Under Ohio's execution policy, DRC Policy 01-COM-11, a doctor medically licensed to prescribe, obtain, dispense, distribute, and/or administer sodium thiopental will not be administering and/or dispensing sodium thiopental to Plaintiff Durr.

111.    Under Ohio's execution policy, DRC Policy 01-COM-11, a doctor medically licensed to prescribe, obtain, dispense, distribute, and/or administer sodium thiopental will not be obtaining or distributing sodium thiopental for use as a lethal injection chemical.

112.    Under Ohio's execution policy, DRC Policy 01-COM-11, a doctor medically licensed to prescribe, obtain, dispense, distribute, and/or administer sodium thiopental will not be prescribing sodium thiopental to Plaintiff Durr.

113.    Title 21 U.S.C. §§ 841 and 842 mean that only certain persons may distribute sodium thiopental for use in executing Plaintiff Durr.

114.    Defendants are not within any of these exceptions.

115.    Neither a registered nurse, nor the Director of DRC, nor a Warden of a DRC facility is authorized under § 841 or § 842 to distribute sodium thiopental for use in executing Plaintiff Durr.

116.    Title 21 U.S.C. § 829 means that a doctor medically licensed to administer and/or dispense hydromorphone must administer and/or dispense the hydromorphone to Plaintiff Durr.

117.    Title 21 U.S.C. § 829 also means that a doctor medically licensed to obtain, prescribe, distribute, and/or order the hydromorphone must issue a prescription for the use of the hydromorphone.

118.   Title 21 U.S.C. §§ 841 and 842 mean that only certain persons may distribute hydromorphone for use in executing Plaintiff Durr.

119.   Defendants are not within any of these exceptions.

120.   Neither a registered nurse, nor the Director of DRC, nor a Warden of a DRC facility is authorized under § 841 or § 842 to distribute hydromorphone for use in executing Plaintiff Durr.

121.   Federal regulations control who may order Schedule I and Schedule II controlled substances. *See* 21 C.F.R. § 1305.04.

122.   Under Ohio's execution policy, DRC Policy 01-COM-11, a doctor medically licensed to prescribe, obtain, dispense, distribute, and/or administer hydromorphone will not be administering and/or dispensing hydromorphone to Plaintiff Durr.

123.   Under Ohio's execution policy, DRC Policy 01-COM-11, a doctor medically licensed to prescribe, obtain, dispense, distribute, and/or administer hydromorphone will not be obtaining or distributing hydromorphone for use as a lethal injection chemical.

124.   Under Ohio's execution policy, DRC Policy 01-COM-11, a doctor medically licensed to prescribe, obtain, dispense, distribute, and/or administer hydromorphone will not be prescribing hydromorphone to Plaintiff Durr.

125.   Under the Federal Food, Drug & Cosmetic Act, only a licensed medical practitioner can obtain and use drugs that require a prescription.

126.   Sodium thiopental is a regulated/controlled substance.

127.   Hydromorphone is a regulated/controlled substance.

128.   Under Ohio's execution policy, DRC Policy 01-COM-11, no licensed medical practitioner will be obtaining or using sodium thiopental for the purpose of executing Plaintiff Durr.

129.    Under Ohio's execution policy, DRC Policy 01-COM-11, no licensed medical practitioner will be obtaining or using hydromorphone for the purpose of executing Plaintiff Durr.

130.    Under the Federal Food, Drug & Cosmetic Act, before a drug can be used, the U.S. Food & Drug Administration (FDA) must authorize its use for the purpose for which a person intends to use it.

131.    The FDA has not authorized the use of intravenously injected sodium thiopental or intramuscularly injected hydromorphone for lethal injections.

132.    The United States Government could prosecute the defendants for violating the Controlled Substances Act and for violating the Federal Food, Drug & Cosmetic Act.[3]

133.    In this action Plaintiff Durr is not seeking to force the Food and Drug Administration or any other United States governmental agency or official to enforce the Controlled Substances Act or the Federal Food, Drug & Cosmetic Act.

134.    Because Plaintiff Durr is not seeking enforcement of the Controlled Substances Act or the Federal Food, Drug & Cosmetic Act, neither the Federal Administrative Procedures Act nor *Heckler v. Chaney*[4] apply to this action.

135.    Plaintiff Durr only seeks a declaration that Defendants' intended actions as applied to him will violate the Controlled Substances Act and the Federal Food, Drug & Cosmetic Act.

**Claims for Relief**

**Count I: Violation of Controlled Substances Act For Ordering, Dispensing, Distributing, and/or Administering Sodium Thiopental By A Person Not Authorized Under The Law And Without A Prescription Issued By A Person Authorized Under The Law.**

136.    Plaintiff Durr restates and realleges the premises in paragraphs 1-135.

---

[3] *See Gonzales v. Raich*, 545 U.S. 1 (2005).
[4] 470 U.S. 821 (1985).

137.    Defendants intend to extinguish Plaintiff Durr's life by injecting him with sodium thiopental intravenously even though the sodium thiopental will neither be injected, dispensed, distributed and/or administered by a doctor licensed to inject, dispense, distribute and/or administer sodium thiopental, nor obtained, dispensed, distributed, injected, and/or administered as a result of a prescription issued by a doctor licensed to inject, dispense, distribute, obtain, and/or administer sodium thiopental.

138.    Because a doctor medically licensed to administer, prescribe, obtain, and/or distribute sodium thiopental will not be prescribing, obtaining, dispensing, distributing, and/or administering sodium thiopental to Plaintiff Durr for purposes of a lethal injection execution, injecting sodium thiopental into Plaintiff Durr will violate the Federal Controlled Substances Act.

**Count II: Violation of Controlled Substances Act For Ordering, Dispensing, Distributing, and/or Administering Hydromorphone By A Person Not Authorized Under The Law And Without A Prescription Issued By A Person Authorized Under The Law.**

139.    Plaintiff Durr restates and realleges the premises in paragraphs 1-138.

140.    Defendants intend to extinguish Plaintiff Durr's life by injecting him with midazolam and hydromorphone intramuscularly even though the hydromorphone will neither be injected, dispensed, distributed and/or administered by a doctor licensed to inject, dispense, distribute and/or administer hydromorphone, nor obtained, dispensed, distributed, injected, and/or administered as a result of a prescription issued by a doctor licensed to inject, dispense, distribute, obtain, and/or administer hydromorphone.

141.    Because a doctor medically licensed to administer, prescribe, obtain, and/or distribute hydromorphone will not be prescribing, obtaining, dispensing, distributing, and/or administering

hydromorphone to Plaintiff Durr for purposes of a lethal injection execution, injecting hydromorphone into Plaintiff Durr will violate the Federal Controlled Substances Act.

**Count III: Administering Chemicals Without a Prescription**

142.   Plaintiff Durr restates and realleges the premises in paragraphs 1-141.

143.   Defendants intend to extinguish Plaintiff Durr's life by injecting him with sodium thiopental and/or hydromorphone, despite the fact that these drugs will be obtained without a prescription from a licensed medical practitioner.

144.   Defendants' intended actions as set forth in this Count III violate the Federal Food, Drug & Cosmetic Act.

**Count IV: Administering Drugs for Purpose Not Approved by FDA**

145.   Plaintiff Durr restates and realleges the premises in paragraphs 1-144.

146.   Defendants intend to extinguish Plaintiff Durr's life by injecting him with drugs that have not been approved by the FDA for the purpose of lethal injection.

147.   Defendants' intended actions as set forth in this Count IV violate the Federal Food, Drug & Cosmetic Act.

148.   Plaintiff Durr is not seeking enforcement by the FDA but rather declaratory relief by this Court.[5]

**<u>Prayer for Relief</u>[6]**

149.   Plaintiff Durr requests a declaratory judgment that carrying out a lethal injection using sodium thiopental when the thiopental is neither obtained, dispensed, administered, distributed nor injected by a doctor licensed to obtain, dispense, administer, distribute, or inject it, nor prescribed by a doctor licensed to do so, violates the Federal Controlled Substances Act.

---

[5] *Cf. Heckler v. Chaney*, 470 U.S. 821 (1985).
[6] Plaintiff has attached an order denying a motion to dismiss concerning the same legal arguments in *Ringo v. Lombardi*, No. 09-4095-CV-C-NKL, (W.D. Mo. Mar. 2, 2010).

150.   Plaintiff Durr requests a declaratory judgment that carrying out a lethal injection using hydromorphone when the hydromorphone is neither obtained, dispensed, administered, distributed nor injected by a doctor licensed to obtain, dispense, administer, distribute, or inject it, nor prescribed by a doctor licensed to do so, violates the Federal Controlled Substances Act.

151.   Plaintiff Durr requests a declaratory judgment that carrying out a lethal injection with sodium thiopental and/or hydromorphone obtained without a prescription from a licensed medical practitioner and distributed without proper authorization under the law violates the Federal Controlled Substances Act.

152.   Plaintiff Durr requests a declaratory judgment that carrying out a lethal injection with sodium thiopental and/or hydromorphone violates the Federal Food, Drug & Cosmetic Act when those drugs will not be obtained and used only by a licensed medical practitioner.

153.   Plaintiff Durr requests a declaratory judgment that carrying out a lethal injection with sodium thiopental and/or hydromorphone—chemicals that have not been approved by the FDA for use in lethal injections—violates the Federal Food, Drug & Cosmetic Act.

Respectfully submitted,

*/s/ Kathleen McGarry*
**Kathleen McGarry (0038707)**
McGarry Law Office
PO Box 310
Glorieta NM 87535
T: (505) 757-3989;
F: (888) 470-6313
Email: kate@kmcgarrylaw.com

and

Dennis L. Sipe, (0006199)
Buell & Sipe Co., L.P.A.
322 Third Street
Marietta, OH 45750

740-373-3219 (voice)
740-373-2892 (facsimile)
E-mail: dennis@buellsipe.com

**Counsel for Plaintiff Darryl Durr**

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Complaint was Hand filed this 6th. day of

April, 2010.  Notice of this filing will be provided to all parties by e-mail, United States Mail

and/or hand-delivered service.  Parties may access this filing through the Court's system.


*/s/ Kathleen McGarry*

**Kathleen McGarry (0038707)**
McGarry Law Office
Email: kate@kmcgarrylaw.com