**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DARRYL DURR,** | : | |
| **Plaintiff,** | : | **Case No. 2:10-cv-288** |
| **vs.** | : | **District Court Judge Frost** |
| **TED STRICKLAND, Governor, et al,** | : | |
| **Defendants** | : | |

_____

**DARRYL DURR'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS'
MOTION TO DISMISS**

_____

Defendants are state actors who plan to execute Plaintiff Darryl Durr ("Durr) by injecting him with sodium thiopental. If Defendants are unsuccessful using sodium thiopental to execute Durr, then they intend to attempt to execute him by injecting him hydromorphone.

Durr seeks a declaratory judgment that Defendants' plans violate the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq* and the Controlled Substances Act ("CSA") 21 U.S.C. *§§ 801 et seq.* Thiopental is a Schedule III controlled substance, and the CSA forbids the dispensing of any such substance without a prescription from a medical practitioner who is

federally licensed and registered to issue it. 21 U.S.C. §§ 822(a), 829(b), 842(a)(1) Hydromorphone is a Schedule II control drug. *Id.* The FDCA similarly requires that such "drugs" be dispensed with a prescription issued *by "a* practitioner licensed by law to administer such drugs. 21 U.S.C. § 353(b)(1) The Act more generally requires that drugs be approved by the FDA before they are administered, and that they be proven effective for their intended purposes. 21 U.S.C. § 355(a), (b) Defendants' protocol does not provide for either drug to be 1)  obtained by prescriptions, and 2) administered by licensed practitioners. Furthermore, no federal agency has approved the chosen drugs for the planned purposes.

On April 8, 2010, Defendants moved this Court to dismiss the complaint. [Doc. No. 6]. Defendants premised their motion upon two legal theories, the complaint 1) fails to establish any case or controversy [*Id.* at pp. 3-4] and 2) otherwise fails to state any claim upon which relief may be granted. [*Id.* at pp. 5-7]. For the reasons set forth herein neither of the Defendants' arguments is well taken. This Court should deny the Defendants' Motion to Dismiss.

## I.  DEFENDANTS MUST MEET A HIGH BURDEN OF PROOF TO PREVAIL ON THEIR MOTION TO DISMISS.

To prevail on a motion to dismiss filed pursuant to Civil Rule 12(b)(6), a "complaint need only provide the defendant with fair notice of what the claim is and the ground upon which it rests." *Wysong v. Dow Chem. Co.*, 503 F.3d 441,

446 (6th Cir. 2007) (citation and internal quotation marks omitted).   The "complaint need not contain 'detailed' factual allegations."   *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007)). Rather, the complaint must contain only "(1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"   *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Twombly*, 127 S. Ct. at 1965, 1974)).   While the complaint's "factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. 544, 555, *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009), this "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Twombly*, 550 U.S. at 556.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).   In determining whether a complaint states a plausible claim, the court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera*, 551 F.3d at 467.

## II.  DURR HAS STANDING FOR ARTICLE III PURPOSES; THERE IS A SUFFICIENT LIKELIHOOD THAT DEFENDANTS WOULD ABIDE BY A DECLARATORY JUDGMENT STATING THAT THEIR ACTIONS ARE ILLEGAL AND SUBJECT THEM TO PROSECUTION.

Defendants exaggerate the "redressability" requirement of Article III standing. [Motion to Dismiss, p. 3]. Redressability is "a matter of probabilities rather than certainties." *Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 910* (7th Cir. 2003) (Posner, J.). A plaintiff need not show that the requested relief will automatically cure the claimed injury. *See Friends of the Earth. v. Laidlaw Environmental Services,* 528 U.S. 167, 181-83 (2000). In that case, individual citizens alleged that mercury discharges from a wastewater treatment plant kept them from fishing and boating in certain portions of a river. They brought suit under the Clean Water Act, seeking the remedy of civil penalties payable to the federal treasury. The Court held that the injuries were sufficiently redressable through monetary penalties even though the plaintiffs had stopped seeking injunctive relief. It sufficed that the relief the plaintiffs sought were likely to deter future violations, and the tainted waterways might become usable again. *Id.* at 185-88; *accord Bruggeman,* 324 F.3d at 910 (potential benefit to plaintiffs from the relief sought was "speculative [b]ut not so speculative as to as to negate standing").

Durr seeks a declaration that Defendants' proposed actions violate the CSA and the FDCA. While Defendants may now believe that their actions accord with these statutes, if faced with a definitive and final declaration to the

contrary, Defendants would then be aware that their actions would subject them to possible prosecution. That possibility may well change the behavior of Defendants, who are free to adopt and implement a method of "lethal injection" that doesn't use controlled substances or otherwise violate federal law. In the State of Washington, for example, the prison's medical director who was not a member of the execution team resigned when he learned that lethal injection drugs were requisitioned from the prison pharmacy without a prescription and the prison superintendent refused to return those drugs to the pharmacy. *See* Jonathan Martin, "State's Top Prisons Doctor Quit Over Execution Policy," *The Seattle Times,* June 23, 2009. Thus, it would be reasonable to conclude that if this Court declares that the manner in which how the Ohio Department of Rehabilitation and Corrections ("DRC") obtains and administers the lethal injection drugs violates the FDCA and the CSA, Defendants would be just as concerned as the medical director in Washington and would modify their lethal injection procedures to conform with the law.

One need not speculate that Defendants would abide by an authoritative declaration of the law. Courts presume that public officials will perform their duties lawfully. *See, e.g., Fidelity & Gas. Co. of New York v. Brightman, 53* F.2d 161, 166 (8th Cir. 1931); *Potter v. Ciccone,* 316 F. Supp. 703, *706* n.2 (W.D. Mo. 1970); *Dittmeier v. Missouri Real Estate Commission, 316* S.W.2d 1, 5 (Mo. 1958). That presumption creates ample "redressability" under the circumstances. *See Franklin v. Massachusetts,* 1550 U.S. 788 (1992).

5

In that case the Commonwealth of Massachusetts and two of its voters challenged the reapportionment of House seats based on the 1990 census. They alleged that Massachusetts lost a House seat because, among other things, the Secretary of Commerce violated the "actual Enumeration" requirement by including overseas military personnel within each state's population count. The President himself is responsible for allocating House seats by issuing a report to Congress. The Supreme Court doubted that a court could enjoin the President from submitting the allegedly flawed report based on the allegedly illegal counting of military personnel. The Court found that plaintiffs nevertheless had standing to seek declaratory relief against the Secretary herself, who would presumably obey the law: "[W]e may assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision by the District Court, even though they would not be directly bound by such a determination."

It is not certain that Defendants would comply with a declaration that their proposed conduct is illegal and subjects them to possible prosecution. Quite aside from the prospect of contempt remedies, Defendants are "substantially likely" to comply with the law declared by this Court, or by another tribunal on appeal. To assume otherwise would brand Defendants as lawless-a presumption that is prohibited. *Franklin, 505* U.S. at 803. The plurality therein went on to reject the merits of the plaintiffs' constitutional

claims, as did a concurrence of four additional justices. *Id.* at 806 (plurality); *id.* at 820 (Stevens, J., concurring). Only Justice Scalia found a lack of redressability. *Id.* at 824-25 (Scalia, J., concurring in part).

Defendants allege, without citation to any authority, that "Durr's death is not an injury upon which he can seek redress, because Durr is subject to a lawfully imposed sentence." [Motion to Dismiss, p. 4]. However, if this was a correct statement then no litigation could ever go forward challenging a means of execution. Defendants' unsupported assertion, if taken to its extreme, would permit them to engage in acts of extreme cruelty when executing a defendant.

Defendants attempt to distinguish the holding in *Ringo v. Lombardi,* 2010 U.S. Dist LEXIS 18142 (W.D. Mo. March 2, 2010). [Motion to Dismiss, p. 4]. Defendants cite to the following language in that case, "A fair reading of the Complaint indicates that Plaintiffs seek to redress the risk of inhumane treatment." *Ringo* at p. 4. Defendants then assert "Unlike plaintiffs in *Ringo*, Durr has not alleged that defendants' alleged violations of law will render his execution inhumane." [Motion to Dismiss, p. 4]. Defendants misconstrue the holding in *Ringo*. The District Court therein employed the phrase "[a] fair reading of the complaint" because the plaintiffs had not specifically alleged the risk of inhumane treatment. This conclusion becomes evident when the sentence that the Defendants cite is read in context of the remainder of that paragraph:

> On Defendants' motion to dismiss, the Court must assume true Plaintiffs' allegations concerning their threatened injury. *See Lujan, 503 U.S. at 561.* A fair reading of the Complaint indicates that Plaintiffs seek to redress the risk of inhumane lethal injection by clarifying that the precautions required by the CSA and FDCA apply. If the CSA and FDCA apply, they provide safeguards against improper use of lethal injection chemicals by assuring that medical practitioners are adequately involved in the use of those chemicals. If the statutes apply to lethal injection, ignoring those safeguards, as Plaintiffs allege Defendants intend to do, places Plaintiffs at risk.

*Ringo* at p. 4.[1]

Durr's complaint alleges sufficient facts to establish a "case or controversy" over which this Court has jurisdiction.

## III. DURR MAY INVOKE THE FDCA AND THE CSA FOR PURPOSES OF SEEKING DECLARATORY RELIEF.

Defendants argue that Durr lacks a "private right of action" to proceed under the FDCA or the CSA. [Motion to Dismiss, pp. 5-6]. This argument fails because the present suit does not seek to "enforce" the statutes or "restrain" violations of them. First, the courts have permitted declaratory judgment actions by non-government parties under the FDCA and even the CSA, to permit the parties to know whether a proposed course of conduct will violate the statute. Second, the FDCA, in particular, specifies a narrow class of private

---

[1] The Warden further argues that Durr could not in "good faith" cite to any facts that support a finding that there is a risk of inhumane execution due to Defendants' failure to comply with the CSA and FDCA. [Motion to Dismiss, p. 4]. That argument goes to the underlying facts and is beyond the scope of the Defendants' motion that was filed Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Court should not address this argument until after either the completion of discovery or a trial on the merits.

declaratory actions that are forbidden at specific times, thus suggesting that other declaratory actions are permitted.

A.  **An affected private party may seek a declaration of whether a course of conduct violates the FDCA or CSA.**

Defendants overstate the prohibition on private suits to "enforce" the FDCA. [Motion to Dismiss, pp. 5-6]. The statute does preclude entities other or individuals than the federal government from instituting an action "for the enforcement, or to restrain violations, of this chapter. 21 U.S.C. § 337(a). However, that statute does not purport to preclude declaratory judgment actions as oppose to actions for enforcement or injunctive relief. As a general matter, the express inclusion of subject in a statute implies the exclusion of others not mentioned. *See, e.g., United States v. Stuckey,* 220 F.3d 976, 985 (8th Cir. 2000). If Congress wished to preclude declaratory relief, it would have.

More specifically, the courts have permitted private parties to bring declaratory actions under the FDCA to permit them to know whether their conduct will violate the statute. For example, In *Medical Center Pharmacy v. Mukasey,* 536 F.3d 383, 387, 392 (5th Cir. 2008), a group of pharmacies sought a declaration that the FDCA did not apply to "compounded" drugs. The Fifth Circuit at least partly agreed, holding that compounded drugs were "new drugs" requiring FDA approval but might fall under certain exceptions to that requirement. *Id.* at 406. Similarly, in *American Health Products Co. v. Hayes,* 574 F. Supp. 1498 (S.D.N.Y. 1983), *aff'd,* 744 F.2d 912 (2nd Cir. 1984) and

9

*Nutrilab v. Schweiker,* 713 F.2d 335 (7th Cir. 1983) the manufacturers of certain bean-based "starchblockers" were permitted to seek a declaration of whether the product was a "food" or a "drug" under the FDCA. The courts in both cases held that starchblockers were a "new drug" requiring FDA approval as safe and effective, and allowing regulation and seizure by the agency. *American Health Products, 574 F.* Supp. at 1509-10; *Nutrilab,* 713 F.2d at 338-39.

A manufacturer may likewise seek a declaration that its product is not a "new drug" subject to FDA approval, but rather, a "generic" or "me too" drug that is bioequivalent to a drug already approved. *Premo Pharmaceutical Labs. v. United States, 629* F.2d 795, 798-99 (2nd Cir. 1980) (collecting authorities). The Second Circuit specifically held that the district court had jurisdiction to entertain the declaratory judgment action. *Id.* at 801. A declaratory judgment as opposed to an injunction was permissible, because it allowed the Government to seize the drugs while the suit remained pending. *Id; see also County of Santa Cruz v. Gonzales,* No. *C* 03-01802 JF, 2008 WL 3892019 (N.D. Cal. Aug. 20, 2008) (declining to dismiss claim for declaratory and injunctive relief that federal enforcement of the CSA against "medical marijuana" facilities violated the Tenth Amendment).

The present case is analogous to *Medical Center Pharmacy,* the "starchblocker" cases, and *Premo.* None is an action to "enforce" the FDCA, and none is brought by the federal government, but all seek a declaration of the

10

FDCA's scope so that concerned parties may conduct their affairs accordingly. It is true that the plaintiffs in the other cases were purveyors of drugs, while Durr stands to be involuntarily injected with them. But that distinction makes Durr even *more* entitled to seek a declaratory judgment. The FDCA exists to ensure that drugs are not only "safe" but also "effective" for their "intended use. *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 133 (2000)*;* 21 U.S.C. § 393(b)(2)(B). Defendants intend to use thiopental and hydromorphone based upon the premise that Durr will not suffer any pain. Considerably more than drug manufacturers, Durr falls within the class of persons protected by the FDCA, a statute that should be read broadly to achieve its remedial purposes. *American Health Products, 574* F. Supp. at 1503.

## B. The FDCA's express prohibition of certain private declaratory judgment actions demonstrates that the statute allows *other* such private actions for a determination of whether the statute has been complied with.

Aside from generally permitting declaratory judgment suits by private parties, the FDCA goes so far as to expressly prohibit certain types of declaratory actions at certain times. These prohibitions involve patent infringement suits during a manufacturer's application to market a "generic" drug. When a manufacturer first seeks FDA approval for a new drug, it must list any patents that cover the drug. 21 U.S.C. § 355(j)(7)(A)(iii) The FDA publishes this list of patents for each approved drug in its so-called "Orange Book." *Ben Venue Laboratories v. Novartis Pharmaceutical Corp., 10* F. Supp. *2d* 446, 448-49 (D.N.J. 1998). When a later manufacturer seeks to market a

11

"generic" version of the drug, the applicant must certify that the proposed generic does not infringe any valid patent that is listed in the Orange Book. 21 U.S.C. § 355(j)(2)(A)(vii). The applicant must provide notice of this certification to the holder of the original "new drug" approval. 21 U.S.C. § 355(j)(2)(B)(ii). "Original" and "generic" marketers frequently engage in patent disputes during the application process. To facilitate that process, the FDCA expressly prohibits the original licensee from filing a declaratory judgment action on whether its patent has been infringed until 45 days have passed since the notice of the generic application. 21 U.S.C. §§ 355(c)(3)(D)(i)I), (j)(5)(C)(i)(I).

The FDCA prohibition has been construed to reach only those declaratory actions that address whether a patent has been infringed or is invalid. *Ben Venue, 10* F. Supp. 2d at 451-42. The statute therefore permits other types of declaratory judgment actions. For example, in *Ben Venue Laboratories' v. Novartis PharmaceuticalCorp.,* a company sought FDA approval for a "generic" version of the drug Aredia. The "generic" company brought a declaratory judgment action that sought a declaration that the "original" company's patent did not actually cover Aredia, and thus, should not have been listed in the FDA's "Orange Book." The court held that it had jurisdiction to consider the suit on its merits. *Id.* at 450-52. The plaintiff sought a declaration that the defendant's patent did not cover the "original" drug in question. It did not seek a declaration that the patent was invalid or that the proposed "generic" would not infringe it.

12

The present declaratory judgment action is permissible under the reasoning of *Ben Venue.* The FDCA expressly prohibits specific types of declaratory judgment actions, but not others. It permits a declaratory action addressing whether a party has complied with the Act. In *Ben Venue,* the question was whether the defendant manufacturer violated the FDCA by listing a patent that did not apply to its approved drug. In this case, the question is whether Defendants have violated the FDCA by their plans to obtain, dispense, and administer drugs without the FDA's approval that the drugs are safe and effective for their intended use.

## IV. THE LANGUAGE AND PURPOSE OF THE FDCA AND THE CSA APPLY TO LETHAL INJECTIONS.

Defendants argue that the FDCA and the CSA do not apply to lethal injection. [Motion to Dismiss, p. 7]. Defendants ignore the plain language of the federal statutes.

### A. The plain language of the FDCA and CSA applies to lethal injections that involve substances which are regulated by those statutes.

The statutory language itself rebuts the defendants' contention. The CSA provides that "no controlled substance in schedule III or IV . . . may be dispensed without a written or oral prescription. 21 U.S.C. § 829(b) Thiopental is a Schedule III controlled substance. *See* http://www.deadiversion.usdoj.gov/schedules/listby_sched/sched3.htm. Defendants must find some source from which they can obtain ("dispensed") the thiopental and hydromorphone that they plan to inject into Durr. The statute's

plain language requires not only a prescription, but a prescription issued through a practitioner who is federally licensed and registered to issue it. 21 U.S.C. § 822(a). To dispense a controlled substance in violation of the CSA is "unlawful. 21 U.S.C. § 842(a)(1). The FDCA is to similar effect. Its definition of "drugs" includes "articles intended for use in the diagnosis, cure, *mitigation,* treatment, or prevention of disease in man or other animals" and "articles . . . *intended to affect the structure or any function of the body* of man or other animals. 21 U.S.C. § 321(g)(1)(B), (C) (emphasis added)· Any "drug" that is unsafe for use except under a licensed practitioner's supervision can be dispensed only upon a prescription from "a practitioner licensed by law to administer such drug. 21 U.S.C. 353(b)(1). More generally, a person may not introduce a "new drug" into interstate commerce without FDA approval, which requires, among other things, a detailed showing that the drug is effective for its intended use. 21 U.S.C. § 355(a), (b). No such approval has been given for the use of thiopental and hydromorphone. Yet, all of these substances are "drugs"; Defendants will use them to "affect the function of the body" by terminating that function altogether.

More tellingly, the statutes permit exemptions for particular types and usages of drugs by particular types of people. The CSA, for example, requires that a person who dispenses a controlled substance must be registered to do so by the Attorney General. 21 U.S.C. § 822(a). Exceptions to this requirement have been promulgated by regulation and include, among others: 1)Employees

14

or agents of registered persons, 21 C.F.R. § 1301.22(a), (b); 2) Practitioners who are agents or employees of hospitals registered to dispense controlled substances, 21 C.F.R. § 1301.22(c), and 3)Federal, state, or local officers who, when enforcing laws and regulations governing controlled substances, may possess such substances in the course of their duties, 21 C.F.R. § 1301.24(a)(1), (a)(2);  and Practitioners who dispense Schedule III, IV or V controlled substances for detoxification treatment, under certain conditions. 21 C.F.R. § 1301.28(a)(l-3).

The CSA contains no such exemption for lethal injection.[2]  The issue of applying the FDCA and CSA to executions has been a matter of public interest at least since the Supreme Court's 1985 ruling in *Heckler v. Chaney,* 470 U.S. 821 (1985). In addition, lethal injection has been *a* prominent issue in death penalty litigation for several years. *Expressio uni us est exclusio alterius United States v. Stuckey,* 220 F.3d 976, 985 (8th Cir. 2000). If Congress wished to exempt executions from otherwise applicable law, it would have done so, just as the State of Utah has done. Utah Reg. R. 156-37-301(q).[3] This Court cannot read into a statute an exception that is not there.

---

[2] Similarly, the FDCA permits the FDA, by regulation, to exempt any "drug" from the statutory approval requirements whenever "such requirements are not necessary for the protection of the public health." 21 U.S.C. § 353(b)(3). But the agency has not promulgated any such regulation for lethal injection chemicals.

[3] The regulation permits the issuance of state controlled substance licenses to "the Utah Department of Corrections for the conduct of execution by the administration of lethal injection under its [Utah] statutory authority and in accordance with its policies and procedures."

**B. Whether a federal agency has expressly ruled that particular drugs cannot be used in lethal injections has nothing to do with whether the FDCA and the CSA apply to lethal injection.**

Because the FDA has not enforced the FDCA or the CSA in the context of lethal injections, Defendants argue that the manner in which Ohio obtains and administers lethal injection drugs does not violate the FDCA or the CSA. [Motion to Dismiss, p. 7]. This argument, too, is unavailing.

First, whether a government agency enforces a statute has nothing to do with whether the statute has been violated. An action either violates a law or it does not. The analysis does not and has never turned on whether enforcement is sought.

Second, Defendants' reliance on *Heckler v. Chaney* is misplaced. *Heckler v. Chaney, 470* U.S. 821, 824-25 (1985). [Motion to Dismiss, p. 7]. *Heckler* held that a prisoner could not compel governmental enforcement of the FDA against those who carry out lethal injections. However, prisoners may challenge the FDA's *general* policy of non-enforcement against federal executioners, as opposed to its decision not to enforce the FDCA in a particular case. *Roane v. Holder, 607* F. Supp. 2d 216, 227 (D.D.C. 2009). The Court in *Roane* would allow such a suit to proceed if the FDCA were simply inapplicable to lethal injections as a matter of law.

**C. Durr's claims are supported by the FDCA's and CSA's underlying purpose of ensuring that therapeutic drugs are effective for their intended use, including the use of thiopental and hydromorphone to prevent an execution from causing severe pain.**

16

Defendants argue that the FDCA and CSA cannot apply to lethal injection because the purposes of those statutes are inapposite to the purpose of lethal injection. [Motion to Dismiss, p. 7]. Setting aside the fact that the Court must follow what Congress says rather than what Congress may "have intended," the use of thiopental in lethal injections still falls within the purpose of the applicable federal statutes.

A central purpose of the FDCA is to ensure that a "drug" is "safe and effective for its intended use." The CSA likewise envisions that the prescriptions required for controlled substances will be issued for "a legitimate medical purpose." For example, a drug that is intended to relieve pain must be known to actually accomplish this goal before it can be administered for that purpose. The FDCA, through the FDA's approval process, attempts to ensure that. That is the reason that studies are conducted on drugs before they can be marketed and administered. *See* 21 U.S.C. *§ 355(b)*. Thiopental and hydromorphone is employed in lethal injections to ensure that death-sentenced inmates do not suffer excruciating pain during execution. Thus, the purpose for which it is administered is therapeutic, and the FDCA role is to ensure that any therapeutic drug is "effective for its intended use." Durr's suit therefore strikes at *"the* core objective of the FDCA. The therapeutic aspect of lethal injections is underscored by recent events in Ohio, where executioners spent two hours trying, without success, to "humanely" execute Romell Broom.

"Peter Krouse, "Strickland Stops Execution After Team Can't Access *Veins,"Cleveland Plain Dealer,* Sept. 16, 2009.

## Conclusion

The Court should deny the Defendant's motion because the arguments asserted do not justify dismissal. Durr has standing because the declaration he seeks is likely to induce statutory compliance by law-abiding public officials. He may invoke the FDCA and CSA in seeking a declaratory judgment, as other courts have allowed other private parties to do. Lastly, Durr has viable claims under the plain language and core purpose of both statutes.

Respectfully submitted,

Kathleen McGarry #0038707
McGarry Law Office
P.O. Box 310
Glorietta, NM 87535
(505) 757-3989

and

Dennis L. Sipe #0006199
BUELL & SIPE CO., L.P.A.
322 Third Street
Marietta, OH  45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)

By: /s/Dennis L. Sipe
Counsel for Darryl Durr

## CERTIFICATE OF SERVICE

I hereby certify the foregoing *Darryl Durr's Memorandum In Opposition To The Defendants' Motion To Dismiss* was filed electronically by the Court's electronic filing system, on this the 13th day of April, 2010.  The parties may access the filing through the Court's system.

/s/Dennis L. Sipe
Dennis L. Sipe #0006199
Counsel for Darryl Durr

19